**R. E. RAPPEPORT & SONS v. BOWLES, Price Administrator.**

**No. 250.**

United States Emergency Court of Appeals.
Heard at Miami, Fla., Oct. 26, 1945.

Decided Feb. 4, 1946.

MAGRUDER, Judge, dissenting.

Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.

W. C. Price, of Miami, Fla., for complainant.

Warren L. Sharfman, Chief, Court Review Rent Branch, of Washington, D. C. (Richard H. Field, Gen. Counsel, Jacob D. Hyman, Associate Gen. Counsel, and Eli A. Glasser, Attorney, all of the Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

McALLISTER, Judge.

This case involves the reduction of rentals in complainant's apartment hotel under Section 5(c) (1) of the Miami, Fla., Area Rent Regulation, in accordance with which the Price Administrator is authorized to decrease rentals which are higher than those prevailing during a given base period for comparable accommodations in the area.

The firm of R. E. Rappeport & Sons is the owner of the Stratosphere Apartment Hotel in Miami Beach, Fla. On March 17, 1944, the Area Rent Director of the Office of Price Administration for the Miami Defense-Rental Area, served notice of a proposal to reduce the rentals then being received for complainant's various apartments, in specified amounts for certain periods of the year. The owner filed objections to the proposal, and after conferences between the local representatives of the Office of Price Administration and the owner, the Area Rent Director, on October 7, 1944, issued final orders decreasing the rents and establishing a schedule of weekly maximum rents for the various apartments. Thereafter, on November 10, 1944, the owner submitted additional evidence of rents received for certain other premises in the general location of the Stratosphere Apartment Hotel, on the ground that such rents were for comparable premises, and requested reconsideration of the prior orders establishing rentals for the apartments in question. On November 16, 1944, the Area Rent Director stated that upon reconsideration, no change should be made. The owner subsequently filed protest on December 8, 1944, and after a request for consideration thereof by a Board

of Review, and a report and recommendations by such Board adverse to the contentions of the owner, an order was entered by the Price Administrator, dismissing in part, and denying the remainder of the protest. Complaint was thereafter filed against the Administrator in this court on July 19, 1945.

Complainant's protest and complaint are based upon the claim that the Area Rent Director, and the Administrator, decreased its rents without proper consideration of comparable rents, in violation of the Regulation, the terms of which will be hereafter, generally, considered.

The circumstances surrounding the rental regulations and the premises in question in this case are unique. Complainant operates a luxury type apartment hotel at Miami Beach, Fla. Its patrons are wealthy tourists who reside in Florida during the winter and spring months of January, February, March, and April. During that time, complainant's apartments have, before the reduction of rents by the Administrator, rented for $200 to $250 per week, or approximately $2,500 to $3,500 per "season." For the other months of the year, there is little demand for such accommodations. The result of the order decreasing the rents of the apartments was to reduce them to an aggregate of $1,600 to $2,000 per season. It is the contention of complainant that the rents which it had been charging were not higher than prevailing rentals for comparable accommodations at Miami Beach during the base period.

According to the rent regulation, seasonal or varying maximum rents are based upon the rent received for the particular unit during the corresponding month of the base period, which is September 1, 1942–August 31, 1943. If the unit for which the rent is to be established was not rented during any month of the base period, the maximum rent for the corresponding month in subsequent years is fixed at the rent received on September 1, 1943. If the premises were not rented on that date, the maximum rent is fixed at the "first rent" received thereafter.

A "first rent", on a year around basis, is established by a renting after September 1, 1943. A "first rent", on a seasonal basis, is a rent received for the first time subsequent to the months of the base period—that is, a rent not originally based upon the rent received for an apartment during the corresponding month of the year September 1, 1942–August 31, 1943. There "first rents", as mentioned above, constitute the maximum rents, in those cases where premises are first rented after the base period.

The case before us is a "first rent" case. None of the apartment units in question were rented up to September 1, 1943, but were thereafter rented at amounts generally averaging $200 per week.

While such "first rents" constitute maximum rents, under the regulation, nevertheless, a maximum rent fixed on the basis of a "first rent", may, in accordance with Section 5 of the regulation, be decreased upon a finding by the Administrator that such first rent is higher than the rent generally prevailing in the defense rental area for comparable housing accommodations during the base period—which period, in the case of seasonal first rents (as in the controversy before us) is the corresponding month or months of the year ending on August 31, 1943.

In this case, the Price Administrator decreased the maximum rents of complainant, under the authority of Section 5 of the regulation, on the ground that such rents were in excess of prevailing rents for comparable accommodations during the base period—that is, during the corresponding months of the year September 1, 1942–August 31, 1943.

The chief issue in the case arises over the nature and kind of accommodations which were selected and used by the Administrator as "comparable" to the premises of complainant, in fixing maximum rents therefor.

In arriving at his determination to decrease the rents in question, and in establishing the maximum rents to be charged for the different months, the Area Rent Director (whose action was sustained by the Price Administrator) sought to ascertain the prevailing rents for comparable accommodations during the base period. With respect to the matter of comparability, we must consider—as did the Administrator—what complainant's apartment hotel is like, and with what premises it may be compared. The first consideration is that it is located on the ocean front of Miami Beach. The only other apartment hotel which had an ocean front on Miami Beach —and which was rented during the base period—was the Forde Ocean Villas. It does not appear in what respects the Forde Villas resemble, or differ from complain-

ant's premises; but in the various hearings and proceedings in this controversy, it was assumed by everyone connected with the case that they were comparable; and the Price Administrator found that the accommodations of the Forde Ocean Villas were, of all the premises in the Miami Defense-Rental Area, the most nearly comparable to complainant's apartments. With this finding, complainant agrees, and accordingly, submits that, since the Forde Ocean Villas were the accommodations most nearly comparable to those of complainant (and the only comparable ones which were rented during the base period), the rents received by the Forde Villas should be considered the generally prevailing rents for accommodations comparable to those of complainant, in establishing complainant's maximum rents, under the regulation.

If, at this point, we digress to observe the difference between the Hotel Regulation and the Housing Regulation, it may serve to clarify the issue here presented. Under the Hotel Regulation, a "freeze date rental" may be subsequently reduced by the Administrator to the level of rents generally prevailing for comparable accommodations during the base period. For units under the Housing Regulation, "freeze date rentals" may not be reduced by the Administrator to such a level of prevailing rents for comparable accommodations. Briefly, the theory of the Administrator is that, under the Housing Regulation, the bargain between the landlord and tenant is frozen. Under the Hotel Regulation, the highest rents received during the base period—rather than bargains—are frozen, and the Administrator reserves the right to reduce such hotel rents. In this case, there was no way in which the Administrator could reduce the rents received by the Forde Villas under the Housing Regulation, even though it were conceded that such rents were higher than prevailing rents for comparable accommodations during the base period. The Administrator could, however, reduce the rents received by the complainant because such rents had not been received during the base period and could not, therefore, be frozen at that time. They were "first rents" received after the base period, and, under the provisions of the Housing Regulation, as above mentioned, such first rents may be reduced by the Administrator to the level of prevailing rents for comparable accommodations during the base period.

Although finding that the Forde Villas were the accommodations most nearly comparable to those owned by complainant, which were rented during the base period, the Price Administrator held that the maximum rents of the Forde Villas were "not generally representative of the rent generally prevailing", for the reason that "those apartments having been the only ones on the beach front which were open for public occupancy during the year preceding September 1, 1943" were "clearly not the product of competition or the normal bargaining process". It was further recited in the findings of the Board of Review, which were subsequently adopted by the Administrator, that all units similar in location to those owned by complainant, had been occupied by the Army—with the exception of the Forde Ocean Villas—and were not rented during the year ending August 31, 1943. The Area Rent Director —and the Price Administrator—therefore proceeded to select as accommodations comparable to complainant's, certain units which, it was concluded, "were comparable in all respects but location." However, the differences in location were considerable. The so-called comparables had no beach, as did complainant, but were located from two to seven blocks from the ocean front; and they were, variously, from thirty to ninety blocks distant from the site of complainant's apartment hotel.

In order to establish the fact that an apartment hotel several miles distant from complainant's premises, and several blocks from the ocean front, constituted accommodations comparable to those of complainant, for the purpose of establishing maximum rents, the Administrator considered the differences in services rendered, the age and quality of the buildings, the distances from shopping centers, schools, churches, and places of entertainment, as well as landscaping and other items, and also the opinions of his expert rent inspectors that the rental value of accommodations in the immediate vicinity of complainant's premises had never been more than one and three-fourths times the rental value of the accommodations selected as comparables. Taking these factors into account, as well as the claimed constant differential in rents between ocean front accommodations and the so-called comparables, the Administrator reduced the rents being received by complainant, and established maximum rents for the various units in the Stratosphere

Apartment Hotel of $22.50 and $25 per week, during eight months of the year, and $55 and $200 per week—dependent upon the unit—for the months of January, February, March, and April.

Complainant contends that, in arriving at his findings of what was the generally prevailing rent for accommodations comparable to complainant's premises, the Administrator improperly refused to consider evidence and further failed to act in accordance with the law when he refused to consider the rents received by the Forde Ocean Villas as rents generally prevailing for accommodations most nearly comparable to complainant's during the base period.

■ The Administrator, as we have said, took the view that the rents of the Forde Ocean Villas were not representative of the rents generally prevailing for accommodations comparable to those of the complainant, and hence declined to give them any consideration in determining the appropriate rental for complainant's accommodations. We think that in so doing the Administrator erred. It is agreed that the Forde Ocean Villas were most closely comparable to the Stratosphere Apartments, of any accommodations which were rented in Miami Beach during the base period. It can, therefore, hardly be denied that the rents being received during the base period for the Forde Ocean Villa apartments were rents prevailing in the base period for accommodations comparable to those of the complainant. The gist of the Administrator's contention, however, is that, for the reasons stated by him to which we have already adverted, these rents were above the generally prevailing rent level in the defense rental area during the base period. It is for this reason, he urges, that they were properly rejected by him in making his determination. This contention cannot be sustained.

■ In the first place, the Administrator has not shown that the rents of the Forde Ocean Villas were above the generally prevailing rent level. He has merely assumed this to be the fact because those apartments were the only ocean front apartments open for rental during the base period and were, therefore, not the subject of ordinary bargaining between landlord and tenant. The complainant, having offered in evidence the rentals of these—concededly the most closely comparable accommodations—

it was clearly the duty of the Administrator to give due consideration thereto. The rents of the Forde Ocean Villas were apparently the result of bargaining between landlord and tenant and, while the advantages may have been on the side of the landlord, it does not necessarily follow that the resulting rents were above the generally prevailing level.

■ Under these circumstances, the burden passed to the Administrator to show the extent—if any—to which the rents of the Forde Ocean Villas were above the generally prevailing rent level in the area. To do so, he could, of course, take into consideration all relevant data, including the rents for prior years of the Forde Ocean Villas and other ocean front apartments, as well as other accommodations in the area reasonably comparable thereto, and any differences in the ratio of increase of such rents between the prior years examined and the base period. In this way, it might be possible for him to establish that the rents prevailing for the Forde Ocean Villas in the base period were above the generally prevailing rent level, by a definite amount or percentage and, therefore, that those rents could not be taken, in themselves, as establishing the rents to be fixed for the complainant's apartments. But this is not to say that the Administrator would even then be at liberty to disregard the rents of the Forde Ocean Villas altogether, or to give them no consideration. For the very evidence which had established that they were above the generally prevailing rent level would undoubtedly give some indication as to the extent to which they exceeded that level and thus furnish relevant data for determining the appropriate rents to be fixed for complainant's apartments. Moreover, it might well be that this evidence would so indicate the amount by which the rents of the Forde Ocean Villas exceeded the general rent level in the base period as to afford the best evidence for determining complainant's rents.

In accordance with the foregoing, a judgment will be entered setting aside the order denying the protest and remanding the case to the Administrator for reconsideration of the protest in the light of all pertinent evidence available to him.

MAGRUDER, Judge, dissents.